1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FAUSTO MARTIN GARCIA ROMERO,          No.  2:21-cv-0213 DB

12              Plaintiff,

13        v.                               ORDER

14   KILOLO KIJAKAZI, Acting
     Commissioner of Social Security,[1]
15

16              Defendant.

17

18          This social security action was submitted to the court without oral argument for ruling on

19   plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2]

20   Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion

21   evidence constituted error.

22   ////

23   ////

24   _____

25   [1] After the filing of this action Kilolo Kijakazi was appointed Acting Commissioner of Social
     Security and has, therefore, been substituted as the defendant.  See 42 U.S.C. § 405(g) (referring
26   to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the
     Commissioner shall, in his official capacity, be the proper defendant").

27
     [2] Both parties have previously consented to Magistrate Judge jurisdiction over this action
28   pursuant to 28 U.S.C. § 636(c).  (See ECF No. 13.)

1    For the reasons explained below, plaintiff's motion is granted, the decision of the

2    Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for

3    further proceedings.

4                              **PROCEDURAL BACKGROUND**

5    On December 19, 2018, plaintiff filed an application for Disability Insurance Benefits

6    ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on

7    May 3, 2018.  (Transcript ("Tr.") at 21, 194-200.)  Plaintiff's alleged impairments included right

8    knee replacement, arthritis, and hip pain.  (Id. at 216.)  Plaintiff's application was denied initially,

9    (id. at 82-85), and upon reconsideration.  (Id. at 87-91.)

10   Plaintiff requested an administrative hearing and a hearing was held before an

11   Administrative Law Judge ("ALJ") on July 21, 2020.  (Id. at 36-58.)  Plaintiff was represented by

12   an attorney and testified at the administrative hearing.  (Id. at 36-40.)  In a decision issued on

13   August 5, 2020, the ALJ found that plaintiff was not disabled.  (Id. at 31.)   The ALJ entered the

14   following findings:

15
16         1.  The claimant meets the insured status requirements of the Social
            Security Act through December 31, 2023.

17         2.  The claimant has not engaged in substantial gainful activity
            since May 3, 2018, alleged onset date (20 CFR 404.1571 *et seq*.).

18
19         3.  The claimant has the following severe impairments: status-post
            bilateral total knee arthroplasty; lumbar spine degenerative disc
            disease; and obesity (20 CFR 404.1520(c)).

20         4.  The claimant does not have an impairment or combination of
            impairments that meets or medically equals the severity of one of
21         the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
            (20 CFR 404.1520(d), 404.1525, and 404.1526).
22

23         5.  After careful consideration of the entire record, I find that the
            claimant has the residual functional capacity to perform light work
24         as defined in 20 CFR 404.1567(b) with the ability to lift and carry 20
            pounds occasionally and 10 pounds frequently.  He can stand and/or
25         walk for six hours in an eight-hour workday and he can sit for six
            hours in an eight-hour workday.  The claimant can occasionally
26         climb ramps and stairs, but he cannot climb ladders, ropes, or
            scaffolds. The claimant can occasionally balance, stoop, kneel,
27         crouch, and crawl.  He cannot work at heights or with dangerous
            moving machinery.

28   ////

2

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born [in] 1966 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged onset date (20 CFR 404.1563).

8.  The claimant has a limited education (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from May 3, 2018, through the date of this decision (20 CFR 404.1520(g)).

(Id. at 23-31.)

On December 3, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's August 5, 2020 decision.  (Id. at 1-7.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on February 3, 2021.  (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)).  If, however, "the record considered as a whole can reasonably support either affirming or

////

3

reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion argues that the ALJ's treatment of the medical opinion evidence constituted error.  (Pl.'s MSJ (ECF No. 18-1) at 8-13.[3])  In Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975), the Ninth Circuit held that an ALJ may reject an "uncontradicted expert opinion[]" by expressly stating "clear and convincing reasons for his doing so."  Id. at 1156.  A few years later in Murray v. Heckler, 722 F.2d 499 (9th Cir. 1983), the Ninth Circuit

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1    held that when analyzing a contradicted opinion from a treating physician, "[i]f the ALJ wishes to

2    disregard the opinion of the treating physician, he or she must make findings setting forth

3    specific, legitimate reasons for doing so that are based on substantial evidence in the record." Id.

4    at 502.  In this regard, the Ninth Circuit's precedent has established a hierarchy for medical

5    opinions based on the physician's relationship to the plaintiff.  See Lester v. Chater, 81 F.3d 821,

6    830 (9th Cir. 1995) ("Cases in this circuit distinguish among the opinions of three types of

7    physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do

8    not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

9    claimant (nonexamining physicians).").  In 1991, the Commissioner promulgated regulations

10   consistent with the Ninth Circuit's hierarchy.  See 56 Fed. Reg. 36932-01, 1991 WL 142361

11   (Aug. 1, 1991).

12        On March 27, 2017, however, revised Social Security Administration regulations went

13   into effect regarding the evaluation of medical opinions.  Pursuant to those regulations, "the

14   Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this

15   includes giving controlling weight to any medical opinion.'"  V.W. v. Comm'r of Soc. Sec., No.

16   18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. §

17   416.920c(a)); see also 20 C.F.R. § 404.1520c(a).  In place of specific evidentiary weight, the

18   Commissioner will "evaluate the persuasiveness of medical opinions" based on (1) supportability;

19   (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such

20   as "evidence showing a medical source has familiarity with the other evidence in the claim or an

21   understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. §

22   404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5).

23        "The distinction between the old and new standards is perhaps more useful in theory than

24   in practice.  Suffice it to say that supportability and consistency are factors that the ALJ must

25   specifically discuss under the regulatory changes when evaluating medical opinion evidence, and

26   the lack of supportability and consistency would certainly be specific and legitimate reasons to

27   ////

28   ////

1   reject an opinion based on caselaw pre-dating the regulatory changes."[4]  Barkhosir v. Kijakazi,

2   No. 1:20-cv-1058 BAK GSA, 2022 WL 783301, at *3-4 (E.D. Cal. Mar. 14, 2022).  In this

3   regard, "[the two 'most important factors for determining the persuasiveness of medical opinions

4   [under the new regulations] are consistency and supportability,' which are the 'same factors' that

5   'form the foundation of the current treating source rule.'"  V.W., 2020 WL 1505716, at *13

6   (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853).

7       "Whatever factors the Commissioner considers in evaluating a medical opinion, he must

8   explain his reasoning to allow for meaningful judicial review, and the Ninth Circuit's 'specific

9   and legitimate' standard is merely a benchmark against which the Court evaluates that

10  reasoning."  Kathleen G. v. Commissioner of Social Security, Case No. C20-461 RSM, 2020 WL

11  6581012, at *3 (W.D. Wash. Nov. 10, 2020); see also DEBORAH ANN KRAMER, Plaintiff, v.

12  KILOLO KIJAKAZI, Acting Commissioner of Social Security, Defendant., Case No. 20cv2065

13  GPC (AHG), 2022 WL 873630, at *4 (S.D. Cal. Mar. 24, 2022) ("While the revised regulations

14  remove the hierarchy of medical sources, they do not relieve the ALJ of the obligation to consider

15  the opinions from each medical source. . . . The Court must also continue to consider whether

16  substantial evidence supports the ALJ's analysis.").

17      Here, plaintiff challenges the ALJ's treatment of the medical opinions offered by

18  plaintiff's treating physician, Dr. Taymour Malak.  (Pl.'s MSJ (ECF No. 18-1) at 8-13.)  The ALJ

19  recounted Dr. Malak's opinions as follows:

20

21  [4] "The Ninth Circuit has not yet addressed the effect of the 2017 regulations on benefits
    applications filed after March 27, 2017, and '[i]t remains to be seen whether the new regulations
22  will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning
    and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing'
23  or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those
    standards.'"  MUANG M., Plaintiff, v. KILOLO KIJAKAZI, Defendant, Case No. 20-cv-9200
24  JSC, 2022 WL 867257, at *3 (N.D. Cal. Mar. 23, 2022) (quoting Joseph Perry B. v. Saul, No.
    Sacv 20-1196-KS, 2021 WL 1179277, at *3 (C.D. Cal. Mar. 29, 2021) (internal citation omitted).
25  See generally Kathleen G. v. Comm'r of Soc. Sec., No. C20-461 RSM, 2020 WL 6581012, at *3
26  (W.D. Wash. Nov. 10, 2020) ("[t]his Court is bound by precedent of the Ninth Circuit and may
    not overrule a decision from that court.  The history of the 'clear and convincing' standard
27  indicates it will not likely be altered by the new regulations, as it was based on evidentiary
    principles in administrative law, and not on a hierarchy of opinions.").
28

1
2
3
4
5
6
7
8
9
10
11

> The claimant's medical provider, Taymour E. Malak, M.D., provided two opinions, which were relatively similar, on June 13, 2019.  Dr. Malak opined that the claimant could sit for one hour in an eight-hour workday and he could stand and/or walk for one hour in an eight-hour workday. The claimant could lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant could not bend, squat, crawl, or climb, but he could frequently reach above shoulder level.  The claimant could perform repetitive action such as grasping, pushing and pulling, and fine manipulation.  He could use his feet for repetitive movements for short amount of time.  The claimant had mild restrictions being around moving machinery and driving automotive equipment.  Furthermore, Dr. Malak opined that the claimant's symptoms were severe enough to limit him from performing full time employment because the symptoms would impair his ability to concentrate.  The doctor opined that the claimant would need to take frequent breaks to lie down at a light or sedentary job and he would miss days unpredictably.  The claimant was not going to recover from his knees and he could not do his past work.  Moreover, the doctor opined that the claimant's back had not improved with injections.

12  (Tr. at 28.)

13        In evaluating Dr. Malak's opinions, the ALJ agreed "that the claimant has functional

14  limitations," but asserted that the opinions were "out of proportion to the objective medical

15  evidence." (Id.)  In this regard, the ALJ stated that Dr. Malak's "own treatment notes" indicated

16  that plaintiff's "physical examination findings were generally within normal limits" and that

17  "bilateral knee imagining" of plaintiff's knees "showed good alignment of the total knee

18  replacement with modular tibial stem in appropriate alignment."  (Id.)

19        If Dr. Malak's opinions were based primarily on the procedural success of plaintiff's knee

20  replacements perhaps imaging showing good and appropriate "alignment" of those knee

21  replacements would be cause to find Dr. Malak's opinions lacking consistency and/or

22  supportability.  Dr. Malak's assessed functional limitations, however, were based not on the

23  structure of plaintiff's knees but on the pain plaintiff experienced in both his knees and back.  (Id.

24  at 706-12.)

25        Moreover, as recounted by the ALJ's decision the objective medical evidence included the

26  following:

27
28

> The claimant's lumbar spine x-ray in December 2018 showed degenerative changes with osteophyte formation and significant disc space narrowing at the L5-S1 level.  The claimant's February 8, 2019

lumbar spine magnetic resonance imaging showed spondylitic change, primarily disc degeneration at L5-S1 with endplate edema and facet hypertrophy and disc bulge at L5-S1 with potential contact the right SI nerve root and mild bilateral L5-SI foraminal narrowing. The imaging showed the disc bulge potentially contacted the L5 nerve roots as they exit the L5-S1 neural foramina.  Imaging further showed an annular tear and disc bulge at L4-5 with potential contact with the L5 nerve roots.

(Id. at 31) (citations omitted).  And plaintiff's treatment notes reflect that these findings "correlate" with plaintiff's "symptoms."  (Tr. at 495.)  To treat these symptoms plaintiff was prescribed strong narcotic pain medication and underwent "interventional spine procedures for . . . pain," specifically spinal epidural injections.  (Id. at 495, 1102.)  See generally Christine G. v. Saul, 402 F.Supp.3d 913, 926 (C.D. Cal. 2019) ("Many courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be 'conservative' treatment.").

In opposing plaintiff's motion defendant has attempted to offer the reasoning and specificity that is absent from the ALJ's opinion.  (Def.'s MSJ (ECF No. 21) at 5-12.)  The court, however, may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions.  See Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner).

Accordingly, plaintiff is entitled to summary judgment on this claim.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'"  Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232

////

1  (9th Cir. 1987)).  A case may be remanded under the "credit-as-true" rule for an award of benefits

2  where:

> (1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed to
> provide legally sufficient reasons for rejecting evidence, whether
> claimant testimony or medical opinion; and (3) if the improperly
> discredited evidence were credited as true, the ALJ would be
> required to find the claimant disabled on remand.

7  Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

8          Even where all the conditions for the "credit-as-true" rule are met, the court retains

9  "flexibility to remand for further proceedings when the record as a whole creates serious doubt as

10 to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  Id. at

11 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court

12 concludes that further administrative proceedings would serve no useful purpose, it may not

13 remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.,

14 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is

15 uncertain and ambiguous, the proper approach is to remand the case to the agency.").

16         Here, plaintiff argues that this matter should be remanded for further proceedings and the

17 Court agrees.  (Pl.'s MSJ (ECF No. 18-1) at 13.)

18         Accordingly, IT IS HEREBY ORDERED that:

19         1.  Plaintiff's motion for summary judgment (ECF No. 18) is granted;

20         2.  Defendant's cross-motion for summary judgment (ECF No. 21) is denied;

21         3.  The Commissioner's decision is reversed;

22         4.  This matter is remanded for further proceedings consistent with the order; and

23         5.  The Clerk of the Court shall enter judgment for plaintiff and close this case.

24 DATED: April 12, 2022                    /s/ DEBORAH BARNES
25                                          UNITED STATES MAGISTRATE JUDGE

26

27

28 DLB:6
   DB\orders\orders.soc sec\romero0213.ord